## Richmond

BEN S. ABBOTT, ET AL. v. BOARD OF SUPERVISORS OF AMHERST COUNTY, ETC.

May 4, 1959.

Record No. 4946.

Present, All the Justices.

The opinion states the case.

*J. Benson Hoge; Easley & Hoge*, on brief for the plaintiffs in error.

*William M. McClenny*, on brief for the defendant in error.

Case submitted on briefs.

WHITTLE, J., delivered the opinion of the court.

A writ of error was granted Ben S. Abbott and others, hereinafter called petitioners, to an order of the Circuit Court of Amherst County sustaining a demurrer to a petition filed by them praying for a declaratory judgment in an alleged controversy between them and the

Board of Supervisors of Amherst County, hereinafter called the Board.

Petitioners alleged that an actual controversy existed between them as citizens of the Madison Heights Sanitary District and as such, users of the district sewerage system, and the Board, claiming that jurisdiction and venue are conferred by Code §§ 8-578 and 8-579.

The petition averred and charged that the sewerage system was installed in the sanitary district in 1936 (Code, §§ 21-113 through 21-140); that the funds used in constructing the system were made up of $2,000 from the ABC fund, a Federal grant, and public subscriptions; that an advisory committee was appointed by the Board on October 5, 1936, to make recommendations to the Board on water and sewerage matters in said district, and has continued to function since that time; that the advisory committee was requested on July 2, 1956, to make a study of the rates and report to the Board on or before August 6, 1956; the committee recommended that the rates be unchanged at that time, which recommendation was adopted by the Board on August 6, 1956; that the State Water Control Board (Title 62, Chapter 2, § 62-10, *et seq.*, Code of Virginia, 1950) ordered the Board to cease pollution of James River with raw sewage prior to August 6, 1956; that the City of Lynchburg had erected a new sewage disposal plant and negotiations were had between the Board and the City concerning the cost of connecting the sewerage system of the district to the system of the city, which was estimated at $25,000 to $30,000; that the City offered to treat the sewage from the district on an annual basis for $2,989.92 or a charge of $1.00 per month to be made to each user of the system, which offer was rejected by the Board; that the Board obtained estimates for a sewage disposal plant, the cost of which was estimated at $60,000; that the Board attempted to raise $90,000 by bond issue which was defeated by the voters of the district on a referendum (Code, § 21-122); that the prevailing sewer rate of 75¢ per month per user had resulted in an accumulation of $10,000 in the sewer fund; that the Board is acting as trustee for the users of said system "who are the equitable owners thereof" and "not acting in a legislative capacity, but is engaged in the operation of a utility in a proprietary capacity"; that the Board is required to act in the best interest of all parties affected; that on October 7, 1957, without referring the matter to the advisory committee, and without notice to the users of said system, the sewer rate was increased from 75¢ per month to $2.50 per month; that the

Board did not of record disclose the purpose of the increase; that the Board had no right to increase the rate except for a specified purpose beneficial to the users of the system; that the petitioners refused to pay the increase on the ground that it was arbitrary, unnecessary and oppressive to the users of the system as sufficient funds are now in hand for maintenance of said system; and that the petitioners are threatened with monthly civil warrants to collect the rates, thereby being harassed by a multiplicity of suits.

Petitioners prayed for a determination of (1) the ownership of the system; (2) the right of the Board to increase the assessments without recommendation of the advisory committee; (3) the right of the Board to increase the rates without any reason of record; (4) whether the Board is required to select the most practical manner of solving the sewage disposal problem; (5) the rights of petitioners in the surplus fund; and (6) all rights that might be enforced in the proceeding.

The effect of the demurrer (which was sustained) is to admit as true all facts well pleaded. Thus the question arises: What facts were well pleaded?

It will be observed that many statements in the petition are mere expressions of opinion and conclusions of law.

The petition shows that petitioners are aware that the Board of Supervisors is under orders to discontinue putting raw sewage into the James River and that some action is required to abate this nuisance; that there is only $10,000 in the sewer fund and that it would cost $30,000 to carry the pipe line to the City of Lynchburg and join with its sewerage system, in which event a monthly sewer service charge would have to be paid; that the Board attempted to establish a sewage treatment plant through a bond issue which was defeated.

In dealing with the prayer of the petition, it will be observed that the only allegation of petitioners' ownership of the system is that public subscriptions were made thereto. There is no allegation that any of the petitioners were contributors.

Clearly the Sanitary District Law (Code, §§ 21-113 through 21-140, *supra*) places the operation and control of this sewerage system under the jurisdiction of the Board of Supervisors, and by Code, § 21-118(5) the Board is authorized "to fix and prescribe the rates of charge for the use of any such system or systems, and to provide for the collection of such charges."

The legal presumption is that the Board will act in the best interest of all concerned. The advisory committee, as its name implies, was appointed by the Board for the purpose of giving advice to the Board if and when called for. There was no obligation on the Board to clear with this committee before acting.

The good intention of the Board in increasing the service charge is presumed, and the reason for an increase is manifest on the face of the petition, *i.e.*, the Board has been ordered to cease the pollution of James River. No fraud is charged, and the discretion of the Board in raising rates is not subject to judicial interference. *Ferguson v. Supervisors*, 133 Va. 561, 566, 567, 113 S. E. 860.

Under the Sanitary District Law, Title 21, Chapter 2, Code of Virginia 1950, the petitioners have no proprietary interest in this system, and in order for petitioners to avail themselves of the declaratory judgment statutes it must be shown that they have a real interest in the subject matter in controversy. 11 Mich. Jur., Judgments and Decrees, § 223, pp. 281, 282; *Brinkley* v. *Blevins*, 157 Va. 41, 45, 160 S. E. 23. (See Anno. 12 A.L.R. 52; also Anno. 19 A.L.R. 1124.)

The judgment of the trial court is

*Affirmed.*