## Richmond

THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA
v. CITY OF NEWPORT NEWS.

December 1, 1952.

Record No. 3983.

Present, All the Justices.

The opinion states the case.

*Leigh D. Williams, W. R. C. Cocke* and *Harry H. Holt, Jr.,* for the appellant.

*Harry L. Nachman,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The telephone company, plaintiff below, brought this suit in equity for redress of its alleged grievances. The trial court sustained a demurrer and dismissed the bill as amended on the ground that the plaintiff had an adequate remedy at law. This appeal brings up for review the validity of that ruling.

The purposes of the bill were to have declared unconstitutional and void an ordinance of the city adopted on April 30, 1951, imposing a license tax of 3% of the company's gross receipts from its local telephone exchange service within the city; to enjoin the collection of the tax, and if, prior to final hearing, the city should undertake to enforce the penal provisions of the ordinance, to secure a temporary injunction to restrain such procedure. The bill also prayed that the city be enjoined from interfering with the business and operations of the plaintiff and from attempting to hinder or prevent the performance of its duty as a public service corporation; and that if plaintiff was mistaken in the relief prayed for, and the court should determine that it had an adequate remedy at law, then that its suit be transferred to the law side of the court pursuant to § 8-138 of the Code and that its bill be treated as an application for relief under § 58-1145.

The bill alleged in substance:

(1) That the ordinance was not a genuine tax measure but a coercive act passed for the purpose of forcing the company to bid on a new franchise which would require it to pay to the city each year, for 20 years, 3% of its gross receipts from local telephone exchange services within the city. In support of this charge the bill quoted from the minutes of the meeting of the council on April 30, 1951, the date of the adoption of the license tax ordinance, a provision to the effect that if the telephone company should bid for the franchise, then the license tax imposed under the license tax ordinance would become null and void;

(2) That the license tax imposed by the ordinance was grossly discriminatory as compared with other public utility

businesses; that only one other class of public service corporations was taxed at all on its gross receipts, and that at a rate of only one-sixth of the tax imposed on the plaintiff; that on telegraph companies, most nearly comparable to plaintiff, no gross receipts tax was imposed, but merely a license tax of $330, or about one-sixtieth of the tax imposed on plaintiff, it being alleged that the license tax imposed on the plaintiff under the April 30 ordinance would amount to $19,130.49 a year; and that the ordinance was otherwise arbitrary and oppressive;

(3) That the ordinance was illegal, unconstitutional and void, enacted without legislative power in the city and violative of provisions of the State and Federal Constitutions.

The nine assignments of error made by the plaintiff to the court's ruling raise only the questions of whether the court erred (a) in holding that the plaintiff had an adequate remedy at law and dismissing the bill; and (b) in failing, after so holding, to transfer the case to the law side of the court.

Section 58-1158 of the Code provides: "No suit for the purpose of restraining the assessment or collection of any tax, State or local, shall be maintained in any court of this Commonwealth, except when the party has no adequate remedy at law."

This section came under review in the recent case of *Todd* v. *County of Elizabeth City,* 191 Va. 52, 60 S. E. (2d) 23. That was a suit attacking the validity and enforcement of an ordinance of the board of supervisors levying an annual tax on the real estate of the plaintiffs to cover the cost of collecting garbage and trash. The bill alleged that the commissioner of revenue had assessed plaintiffs' lands with the tax and that the treasurer was attempting to collect it. It was claimed that the ordinance was illegal and void because, among other things, not enacted in accordance with the Constitution and laws of Virginia. It was further alleged that there were approximately eleven thousand other persons who desired relief from the ordinance and resort to equity was necessary to avoid a multiplicity of suits. The bill prayed that the treasurer and other county officials be enjoined from any further collections under the ordinance and required to repay what had been collected. We held that the trial court should have sustained the defendant's demurrer and dismissed the bill on the ground that the plaintiffs had adequate remedies at law, one of which was to proceed under what are now sections 58-1145 through 58-1151 of the Code of 1950.

Section 58-1145 provides that any person assessed with county or city levies or other local taxes on real estate who is aggrieved by such assessment, "and any person assessed with * * * a local license tax, aggrieved thereby," may apply for relief to the proper court within specified times.

Section 58-1148 provides that if the court is satisfied from the evidence that the applicant is erroneously charged with a local license tax, "and that the erroneous assessment was not caused by the wilful failure or refusal of the applicant to furnish the tax assessing authority with the necessary information, as required by law, the court may order that the assessment be corrected." If the assessment is too much, the court may reduce it and order that the applicant be exonerated "from the payment of so much as is erroneously charged, if not already paid and, if paid, that it be refunded to him." If the assessment is less than it should be, the court may increase it, and for the purpose of reducing or increasing the assessment and adjusting the taxes, "the court shall be clothed with all the powers and duties of the authority which made the assessment complained of, * * *."

Section 58-1150 provides that an order of exoneration shall restrain the tax-collecting officer from collecting what is erroneously charged, or if paid, shall compel the collector to refund "the amount specified in the order."

█ Relief under these statutes is not confined to the correction of an assessment which is merely erroneous. They embrace also levies and assessments claimed to be unconstitutional, illegal and void. *Todd* v. *County of Elizabeth City, supra*, and cases there cited. See also, *Heth* v. *Radford,* 96 Va. 272, 31 S. E. 8; *Shelton* v. *Platt,* 139 U. S. 591, 11 S. Ct. 646, 35 L. ed. 273; *Huston* v. *Iowa Soap Co.* (8 Cir.), 85 F. (2d) 649, 108 A.L.R. 173 and Anno. at pp. 184 ff.; 51 Am. Jur., Taxation, § 1230, p. 1048.

█ The object of these statutes was to furnish an expeditious and inexpensive remedy against taxes which have been assessed or collected. They are to be liberally construed in order to further the remedy so provided. *Commonwealth* v. *Smallwood Memorial Institute,* 124 Va. 142, 97 S. E. 805; *Commonwealth* v. *P. Lorillard Co.,* 129 Va. 74, 105 S. E. 683.

█ Where the statutory remedy is adequate it must be followed and the previously existing remedy by injunction is cut off and cannot be pursued. *Todd* v. *County of Elizabeth City,*

*supra.* This is because section 58-1158, *supra,* prohibits any suit for the purpose of *restraining the assessment or collection* of any tax, except when there is no adequate remedy at law. The test of that statute in every case is to be found in the adequacy of the remedy at law. "In view of the convenience, elasticity and fairness of proceedings" under sections 58-1145 ff., it was the controlling purpose of the legislature in the enactment of section 58-1158 "to compel a resort thereto whenever the remedy thereunder was adequate." *Commonwealth* v. *Tredegar Co.,* 122 Va. 506, 95 S. E. 279.

It seems quite clear that all the points relied on by the plaintiff in its bill to establish the illegality and unconstitutionality of the April 30 ordinance can be readily asserted and effectively dealt with in a proceeding under § 58-1145.

The plaintiff argues, however, that on the facts alleged in its bill it has no adequate remedy at law and that this case is to be distinguished from the *Todd Case* because here there was no assessment, and the absence of an assessment renders section 58-1145 inapplicable according to our holding in *County of Sussex* v. *Jarratt,* 129 Va. 672, 106 S. E. 384, 627.

That case involved an attempt by the board of supervisors of Sussex county in 1917 and 1918 to collect taxes on bank stock for prior years in which no such levy or assessment had been made. It was held that relief was properly sought in equity and not under the statute, because there had been no assessment of the taxes sought to be collected and that "an assessment is a *sine qua non* of relief" under the statute; that the determinative question on the application of the statute was whether the plaintiffs "were aggrieved by an assessment of their property." It was said in that case that levy and assessment have very different meanings, the levy being a legislative function, declaring the subject and rate of taxation, and assessment being *quasi* judicial, consisting in making a list of the taxpayer's property and fixing its valuation or appraisement.

The holding in that case does not, we think, render inapplicable the statutory procedure in the situation here. In *Richmond* v. *Eubank,* 179 Va. 70, 18 S. E. (2d) 397, it was pointed out that the word "assessment" used in the statute had two meanings, one of which applied to the amount of money that was to be paid. The ordinance of April 30 requires the telephone company to pay a license tax of 3% of its gross receipts.

The company is required to make application for its license and file a statement showing the amount of these gross receipts "and the percentage tax (*sic*) should be paid thereon." So far as shown by the record, nothing further was required except for the commissioner of revenue to issue the license, enter the amount on his books and report it to the city auditor. There is no allegation in the bill that such an application was ever made by the company. To the contrary, the bill alleges that it was impossible for the company to comply with that requirement by the time designated in the ordinance. So far as the plaintiff is concerned, the assessment it complains of was made by the ordinance, and the plaintiff is to all intents and purposes a person assessed with a local license tax and aggrieved thereby within the meaning of section 58-1145. If the plaintiff has not been assessed by the ordinance, then its resort to equity is premature because "equity will not enjoin an apprehended illegal assessment." 51 Am. Jur., Taxation, § 1226, at p. 1046; *First Nat. Bank* v. *Albright,* 208 U. S. 548, 28 S. Ct. 349, 52 L. ed. 614.

Plaintiff next argues that here, as distinguished from the *Todd Case,* there is equitable jurisdiction on the ground that equity will restrain the enforcement of a law, pending determination of its validity, which imposes penalties so severe as practically to preclude a test of its validity in an action to enforce the penalties, citing *Ex parte Young,* 209 U. S. 123, 28 S. Ct. 441, 52 L. ed. 714, 13 L. R. A. (N. S.) 932, and similar cases.

In the *Young Case* disobedience to an order of a railroad commission materially reducing railroad rates was made subject to penalties of $2,500 to $5,000 for the first offense and $5,000 to $10,000 for each subsequent offense. It was held that if a law made the decision of the legislature or of a commission conclusive as to the sufficiency of rates, it was unconstitutional, and that a law which indirectly accomplished the same result by imposing such penalties on an appeal for judicial relief as to force an abandonment of that right rather than face the conditions, was likewise unconstitutional. The court said:

"It may therefore be said that when the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, the result is the same as if the law in terms prohibited the company from seeking judicial construction of laws which deeply affect its

rights.'' 209 U. S. at p. 147, 52 L. ed. at p. 724. See also, *Wadley Southern Ry. Co.* v. *Georgia,* 235 U. S. 651, 35 S. Ct. 214, 59 L. ed. 405.

The license ordinance of April 30 provides a penalty of 5% and interest thereon for failing to pay the license tax within 30 days from its due date, and for operating without a license a fine of $5 to $300 for each offense. It is not shown that these penalties and fines are so enormous, or the imposition of them so imminent or certain as to intimidate this plaintiff from resorting to the courts to test the validity of the ordinance. On the contrary, a prayer of its bill is that if it be decided that equity has not jurisdiction, then that its cause be transferred to the law forum for hearing and determination. See *Huston* v. *Iowa Soap Co., supra.*

Plaintiff further argues that if it seeks to avoid the penalties by paying the tax, it could only recover the principal without interest in a proceeding under section 58-1145, as held in *Commonwealth* v. *Safe Deposit, etc., Co.,* 155 Va. 458, 155 S. E. 897, and that the statutory remedy is not adequate also for that reason. It has been so held as to statutes involving different procedures from the one provided by the Virginia statute. *Procter & Gamble Distributing Co.* v. *Sherman* (So. Dist. N. Y.), 2 F. (2d) 165; *Mullaney* v. *Hess* (9 Cir.), 189 F. (2d) 417; *Southern California Tel. Co.* v. *Hopkins* (9 Cir.), 13 F. (2d) 814, affirmed (but not specifically on the interest point) 275 U. S. 393, 48 S. Ct. 180, 72 L. ed. 329. It has been held to the contrary under a statute which ''contemplated a speedy determination of the question as to the validity of the tax and a refund only of the actual amount paid.'' *Glass* v. *Prudential Ins. Co.,* 246 Ala. 579, 22 So. (2d) 13.

If inability to recover interest is alone sufficient in all cases to give equity jurisdiction, ''for the purpose of restraining the assessment or collection of any tax,'' then the bar to such suit sought to be set up by section 58-1158 would be largely nullified. The underlying purpose of such statutes is to prevent ''those liable for taxes in some amount to delay payment or possibly to escape their lawful burden, and so to interfere with and thwart the collection of revenues for the support of the government.'' *Miller* v. *Standard Nut Margarine Co.,* 284 U. S. 498, 52 S. Ct. 260, 76 L. ed. 422.

The application of section 58-1158 should not be with-

held and suits in equity to restrain the assessment or collection of taxes allowed contrary to its provision and purpose, on mere apprehension of harm which is not shown to be imminent or serious. *Huston* v. *Iowa Soap Co., supra.* It is not to be presumed that courts will act oppressively in administering legal remedies or that resort by the plaintiff to the statutory procedure to test the validity of the tax sought to be charged against it will result in serious or irreparable injury either in the payment of penalties or the loss of interest.

██ ██ The plaintiff is clearly entitled to have the validity of its attack upon the ordinance of April 30 judicially determined. The trial court was right in holding that plaintiff had not presented a proper case for injunctive relief because it had an adequate remedy at law and section 58-1158 prohibits the use of injunction in such cases. But the court erred in dismissing the plaintiff's bill and thereby denying its alternative prayer that if the plaintiff be mistaken in the forum in which it sued, then that its suit be transferred to the law side of the court and its bill treated as an application for relief under section 58-1145. That prayer should have been granted.

Section 8-138 of the Code provides that "no case shall be dismissed simply because it was brought on the wrong side of the court," but that when a plaintiff has proceeded in equity when he should have proceeded at law, or the other way about, the court shall direct a transfer to the proper forum. We have held this section to be mandatory when it appears that the real reason for dismissal was that the case was brought on the wrong side of the court. *Nash* v. *Harman,* 148 Va. 610, 615, 139 S. E. 273, 275; *Salyer Co.* v. *A. J. Doss Coal Co.,* 157 Va. 144, 150, 160 S. E. 54, 56.

The decree complained of is therefore affirmed in so far as it sustained the demurrer to the bill, but reversed in ordering that the plaintiff's suit be dismissed. The case will therefore be remanded to the circuit court with direction that it be reinstated on the docket and transferred to the law side, to be there treated and proceeded in as an application for relief under section 58-1145 of the Code.

*Affirmed in part, reversed in part and remanded.*